# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| JOHN HAIDUL, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | )     Case No. 4:14-CV-817-SPM |
| | ) |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the undersigned on the petition of Missouri state prisoner John Haidul, Jr. ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to U.S. § 636(c)(1). (Doc. 6). For the following reasons, the petition is denied.

## I.   FACTUAL BACKGROUND

The Missouri Court of Appeals summarized the facts as follows:

> The State charged Petitioner with first-degree robbery. The trial court conducted a jury trial. At trial, the State presented evidence from a Commerce Bank teller who stated that in September 2007 a man she later identified as [Petitioner] entered the bank and presented her with a note reading, "This is a robbery. I have a gun. Give me all your money." The teller testified that she complied with the demand, and [Petitioner] left the bank with the cash.
>
> Security camera footage of the robbery, which was broadcast on the evening news, was admitted into evidence and shown to the jury. [Petitioner's] babysitter testified that she recognized [Petitioner] from images on a news channel's website and called the police. The babysitter further recounted that she showed the footage to [Petitioner's] wife, who began crying and responded, "Oh my God, that's [Petitioner]."
>
> The State also presented the testimony of a City of Florissant police officer who stated that [Petitioner] was placed under arrest, confessed to

committing the crime, and prepared a written statement to that effect. [Petitioner's] written confession was admitted into evidence.

[Petitioner] testified on his behalf at trial and during cross-examination claimed to be at lunch with a friend named David Holt ("Holt") at the time of the robbery. [Petitioner] acknowledged that Holt would not be testifying. The jury found [Petitioner] guilty of first-degree robbery. The trial court sentenced [Petitioner] to a term of twenty years' imprisonment. On appeal, this Court affirmed the judgment. *State v. Haidul*, 334 S.W.3d 920 (Mo. App. E.D. 2011).

Resp't Ex. U, at 1-2.

Petitioner filed a *pro se* motion for post-conviction relief. Resp't Ex. L, at 4-22. In that motion, he asserted several claims of ineffective assistance of trial counsel. Resp't Ex. L, at 12-16. Petitioner subsequently filed, through counsel, an amended motion for post-conviction relief, in which he asserted that his trial counsel was ineffective because he had not contacted David Holt and called him as an alibi witness at trial. *Id.* at 26-37. Petitioner also stated in the amended motion that he was including in the motion his *pro se* claims. *Id.* at 34.

The motion court denied Petitioner's request for an evidentiary hearing as to the claims asserted in his *pro se* motion, but held an evidentiary hearing to address Petitioner's claim that his counsel was ineffective for failing to call David Holt as a witness. Resp't Ex. K; Resp't Ex. L, at 114. The court ultimately denied all of Petitioner's claims. Resp't Ex. L, at 114-39. On September 30, 2013, Petitioner filed an appeal, through counsel, asserting on appeal only the claim that trial counsel was ineffective for failing to call David Holt as a witness. Resp't Ex. M. On January 10, 2014, Petitioner filed, through counsel, a document entitled, "Appellant's Waiver of Counsel and Request to Proceed Pro Se, With Attached Pro Se Appellant's Brief." Resp't Ex. O. The motion requested that Petitioner be permitted to proceed *pro se* and that the court accept his *pro se* brief. *Id.* The motion was accompanied by a *pro se* brief in which Plaintiff asserted three claims: (1) ineffective assistance based on trial counsel's failure to present or use several pieces of evidence; (2) ineffective assistance of counsel based on the failure to investigate and

call various defense witnesses; and (3) ineffective assistance of counsel based on the failure to investigate Petitioner's assertion that Detective Lewis had denied him the right to counsel and that he had inhaled toxic mace a few hours before giving his written confession. Resp't Ex. P, at 8, 38, 43. On January 15, 2014, the Missouri Court of Appeals granted Petitioner's request to proceed *pro se* but denied his request to accept the *pro se* brief; it did not state any reasons for its decision. Resp't Ex. Q. On February 6, 2014, Petitioner filed a motion to file a reply brief out of time. Resp't Ex. R. On February 14, 2014, the Missouri Court of Appeals denied the motion on the ground that it was out of time, was not a proper reply brief, and included several attached documents that had not been filed as part of the legal file. Resp't Ex. T. The Missouri Court of Appeals then affirmed the decision of the motion court on the single claim presented by Petitioner's post-conviction counsel. Resp't Ex. U.

In the instant petition, Petitioner asserts ten claims of ineffective assistance of trial counsel: (1) failure to call David Holt, Mary Peters, and Steven Shear[1] as defense witnesses; (2) failure to obtain a photo or Carfax report of Petitioner's car to refute the State's theory that Petitioner's car was seen at the scene of the robbery; (3) failure to obtain transcripts of Detective Lewis' testimony from a motion to suppress hearing in another case; (4) failure to contact witnesses whose testimony would have shown that Petitioner was denied counsel during his interrogations; (5) failure to object to the testimony of Cathy Bienkowski that Petitioner had paid her in cash; (6) failure to contact and depose Petitioner's father about exculpatory evidence regarding Petitioner's ex-wife; (7) failure to obtain and present photographs of Richard Michele and Christopher Knocke[2] and to present Crime Stoppers tips to show that there were people other than Petitioner who resembled the robbery suspect; (8) failure to investigate Petitioner's

---

[1] Mr. Shear's name is spelled at various places in the record as "Shear," "Sheer," and "Shears."
[2] Mr. Knocke's name is spelled as "Knoche" at certain places in the record.

contention that he was exposed to mace and denied his asthma inhaler shortly before his confession; (9) failure to introduce evidence to prove that Petitioner's ex-wife committed perjury during her dissolution from Petitioner; and (10) failure to introduce evidence to undermine the bank teller, Ms. Hernandez's testimony. Pet'n, Doc. 1. While Petitioner raised eight of these grounds in his post-conviction motion, Petitioner only raised part of one of these grounds (Ground One, as it relates to David Holt) in his post-conviction appeal, filed through counsel. Resp't Ex. M.

## II. LEGAL STANDARDS

### A. Legal Standard for Reviewing Claims Adjudicated on the Merits in State Court

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the

governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

In the instant case, each of Petitioner's claims is based on an assertion that his counsel was ineffective. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a

heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To demonstrate prejudice, a Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

### B. Procedural Default

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause

for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *accord Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III.   DISCUSSION

### A. Claim Properly Presented at Each Step of the State Post-Conviction Process: Ground One (Part A)—Ineffective Assistance of Counsel Based on Failure to Call David Holt as a Witness

In Ground One (Part A), Petitioner argues that his trial counsel was ineffective because she failed to contact David Holt and call him as an alibi witness. Petitioner asserts that he had lunch with Mr. Holt on the day of the bank robbery and that he informed his trial counsel of that fact. Petitioner also suggests that Mr. Holt could have been a witness to Petitioner's physical description at the time of the robbery. This claim was presented in Petitioner's amended motion for post-conviction relief and in his appeal from the denial of that motion, and the state courts denied the claim on the merits.

In denying this claim, the Missouri Court of Appeals found that Petitioner had not established either prong of *Strickland*. It stated:

We . . . find that [Petitioner] does not establish that his trial counsel employed unreasonable trial strategy. Counsel testified that she did not consider Holt a good witness because of the uncertainty surrounding his potential testimony. Counsel also indicated that [Petitioner] did not tell her Holt's last name or ask her to contact him. In light of counsel's explanation and the strong presumption that a decision to not call a witness is a matter of trial strategy, we do not find that [Petitioner] has shown that his counsel's performance was deficient under the first prong of *Strickland v. Washington*.

Moreover, [Petitioner] does not show that counsel's failure to call Holt prejudiced his defense, as is required under the second prong of *Strickland*. Holt's testimony at the evidentiary hearing would not have supported [Petitioner]'s alibi, but would have been detrimental to his defense. Additionally, we note that the State's case against [Petitioner] was strong. The State presented overwhelming evidence of [Petitioner]'s guilt: the jury saw security camera footage of the robbery, heard from eyewitnesses, and learned [Petitioner] had confessed to the crime. As such, we find that [Petitioner] did not suffer any prejudice and the result of the proceeding would not have been different had Holt testified. Point I is denied.

Resp't Ex. U, at p. 5.

The Missouri Court of Appeals' adjudication of the claim was not objectively unreasonable under *Strickland*. The court's finding regard to the first prong of *Strickland* (deficient performance) is supported by Petitioner's trial counsel's testimony that although Petitioner had told her that there was a friend of his that he had supposedly had lunch with on the day of the robbery, her notes indicate that the friend was not certain what day he actually had lunch with Petitioner and that there was uncertainty about it. Resp't Ex. K, at 12-13. It was not unreasonable for Petitioner's trial counsel not to contact a witness who was uncertain about Petitioner's whereabouts at the time of the crime.

Moreover, even assuming, *arguendo*, that Petitioner could establish the first prong of *Strickland*, the record makes it clear that Petitioner was not prejudiced by his trial counsel's failure to contact Mr. Holt or call him as a witness. Mr. Holt's testimony at the evidentiary hearing shows that Mr. Holt did *not* remember having lunch with Petitioner on the date of the robbery (a Monday):

Q:      So, not to interrupt you, he called, he said remember that time we went to lunch?

A:      Yes.

Q:      It was Monday?

A:      Yes.

Q:      How did you respond?

A:      My response was John, we really shouldn't—well.

Q:      I am sorry, at this time were you sure, let me ask you that.

A:      I was positive of when he was talking about, not the date, but when he was talking about we had lunch, I was positive.

Q:      At that time you weren't sure what day?

A:      No.

Q:      So continue, what does he say?

A:      I said, John, we really shouldn't be talking about this. You are being taped. And he insisted. I said, if you want me to tell you what I remember, I invited you to lunch on Monday, you said you were doing something and we went to lunch the next day.

Q:      How did he respond?

A:      He insisted I need to keep thinking about it.

Q:      Okay. Did you talk to him again about this topic?

Q:      A few times, yeah.

Q:      Was it around this time?

A:      No, it was sometime after. I think desperation was setting in and I told him, I just—I can't say something I didn't remember, and what I remember it was— I remember it happening.

Q:      So you told him is what you remember [sic]?

A:      Yes, I am not going to lie.

Resp't Ex. K, at 6-7. It is clear that even if trial counsel had contacted Mr. Holt and called him as a witness, Mr. Holt would not have provided an alibi for Petitioner. To the contrary, his testimony could have actually harmed Petitioner's case by showing that Petitioner was attempting to pressure him into creating an alibi.

The Missouri Court of Appeals' finding of no prejudice is also supported by the overwhelming evidence of guilt in the record, including the identification of Petitioner as the robber by Jessica Hernandez, the bank teller who handed the money to the robber, Resp't Ex. C, at 120-21, 127-29, 131; Resp't Ex. D, at 265-71; the identification of Petitioner as the robber by Cathy Bienkowski, the babysitter for Petitioner's children, who saw photographs of the robbery on a news channel website and recognized the robber's photograph as that of Petitioner, Resp't Ex. D, at 217-18, 221-23; the identification of Petitioner as the robber by Tarsha Haidul, Petitioner's ex-wife, who saw photographs of the robber on the same website and identified the photograph as that of Petitioner, Resp't Ex. D, at 244-46; the surveillance video and photographs of the robbery, which were introduced into evidence, Resp't Ex. C, at 154-61; and Petitioner's own admission to the police that he robbed the bank, Resp't Ex. D, at 287-91; Resp't Ex. G. In light of this overwhelming evidence, it was reasonable for the motion court to find no reasonable probability that the outcome of the trial would have been different if a witness had testified that he might have had lunch with Petitioner on the day of the crime. Moreover, in light of all of this overwhelming evidence, Petitioner offers no basis for a finding that the outcome of trial would have been different had Mr. Holt testified about Petitioner's physical appearance at the time of the robbery, particularly given that Petitioner's own ex-wife and babysitter had identified him and that the jurors saw the surveillance footage and photographs of the robber. *See, e.g.*,

*Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010) ("When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice.") (citing *Strickland*, 466 U.S. at 700); *Reed v. Norris*, 195 F.3d 1004, 1006 (8th Cir. 1999) ("We find it unnecessary to discuss the reasonableness of counsel's conduct because, given the overwhelming evidence of [petitioner's] guilt presented at trial, we find that it would be impossible for him to demonstrate prejudice under *Strickland*.").

For all of the above reasons, Ground One (Part A), asserting ineffective assistance of trial counsel based on the failure to call Mr. Holt as a witness, is denied.

### B. Claims Presented in the Motion for Post-Conviction Relief but Not in the Appeal Filed Through Counsel: Ground One (Parts B and C), Grounds Two Through Four, and Grounds Six through Nine

Ground One (Parts B and C), Ground Two, Ground Three, Ground Four, Ground Six, Ground Seven, Ground Eight, and Ground Nine[3] were presented in Petitioner's amended motion for post-conviction relief, and the motion court denied each of those claims on the merits. Resp't Ex. L, at 116-139. However, those claims were not presented in Petitioner's appeal from the denial of that motion, filed through counsel. Resp't Ex. M. Respondent argues that these grounds have therefore been procedurally defaulted. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (claim of ineffective assistance of counsel that was presented in motion for post-conviction relief but not on appeal from the denial of that motion was procedurally defaulted); *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) ("Missouri procedure requires that a claim be presented at each step of the judicial process in order to avoid default. Failure to raise a claim on

---

[3] Respondent appears to take the position that Ground Five was also presented in Petitioner's motion for post-conviction relief. However, the Court's review of that motion does not support that conclusion. *See* Resp't Ex. L, at 12-16.

appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review.") (quotation marks and citations omitted).

Petitioner appears to be arguing both (1) that any procedural default of these claims was excused because his post-conviction appellate counsel abandoned the claims, providing "cause" for the default, and (2) that no procedural default occurred in the first place, because he did everything he could do to raise the claims on appeal by waiving his right to counsel and presenting a *pro se* brief to the Missouri Court of Appeals (even though that *pro se* brief was not accepted). Petitioner's first argument is without merit. It is well established that ineffective assistance of post-conviction appellate counsel does not constitute "cause" to excuse a procedural default. *See Arnold*, 675 F.3d at 1086-87 (failure of post-conviction counsel to raise claims on appeal from initial-review collateral proceeding does not constitute cause to excuse procedural default). Petitioner offers no other basis for finding cause to excuse the procedural default. Additionally, Petitioner does not allege any new evidence of innocence that might support a finding that failure to address this claim would constitute a miscarriage of justice. Thus, if this claim is procedurally defaulted, there is no basis for excusing the default.

Petitioner's second argument—that these claims were not procedurally defaulted because he did everything he could to present them to the Missouri Court of Appeals—presents a closer question. Petitioner relies on *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997). In *Clemmons*, the petitioner told his post-conviction appeal counsel to raise certain issues, and counsel did not raise them. *Id.* at 948. The petitioner subsequently "instructed him to file a supplemental brief raising the additional issues" so that they would be properly presented, and counsel still refused to present them. *Id.* The petitioner then filed a motion in the Missouri Supreme Court to file a supplemental brief *pro se*, and the Missouri Supreme Court denied the *pro se* motion without

comment. *Id.* The Eighth Circuit found that the claim at issue had been fairly presented and had not been procedurally defaulted, stating, "We do not know what else he could have done, as a practical matter, to present the claim [to the Missouri courts] for a decision on the merits." *Id.* at 948-49. *See also Cole v. Hopkins*, 56 F. App'x 742, 744 (8th Cir. 2003) ("The record indicates that Cole has been advocating this fraudulent element of the offense claim since before his trial. Cole repeatedly requested appointment of counsel who would argue his theory of the case. Although many attorneys were appointed, and excused, none raised Cole's claim. When counsel refused to raise it on appeal, Cole submitted supplemental *pro se* briefs. Cole has done all he can to place the issue before the courts.") (citing *Clemmons*, 124 F.3d at 948).[4]

The situation here appears to be similar to that in *Clemmons*. Petitioner alleges that months before his post-conviction appellate brief was due, Petitioner prepared his own brief and mailed it to his appellate counsel. His appellate counsel then filed a brief that did not include his *pro se* claims. Petitioner alleges that upon finding out that his post-conviction appellate counsel had filed a brief that did not contain the *pro se* claims from Petitioner's post-conviction motion,

---

[4] Several courts have found *Clemmons* distinguishable and found procedural default where the Missouri Court of Appeals' refusal to accept a *pro se* brief was based on a specific local rule forbidding the filing of *pro se* briefs filed by parties represented by counsel. *See, e.g.*, *Freeman v. Cassady*, No. 15-0142-CV-W-ODS-P, 2015 WL 2449249, at *4-*5 (W.D. Mo. May 21, 2015) (finding *Clemmons* inapposite where the Missouri Court of Appeals had specifically cited a local rule barring the filing of *pro se* briefs by counseled parties); *Warren v. Roper*, No. 4:07-CV-625-CEJ, 2008 WL 1913978, at *6 (finding *Clemmons* distinguishable despite the petitioner's filing of a supplemental *pro se* brief, because "the Missouri Court of Appeals for the Eastern District of Missouri has promulgated a procedural rule barring the filing of pro se briefs by parties represented by counsel"). However, those cases do not appear to apply here. In this case, the Missouri Court of Appeals did not rely on any such rule (or any rule at all) in its decision not to accept Petitioner's brief, nor does it appear that such a rule would apply here. Rule 380 of the Missouri Court of Appeals for the Eastern District of Missouri expressly applies only in cases "where a party is represented by counsel" and attempts to file a *pro se* brief. In this case, however, Petitioner waived his right to counsel, and the Missouri Court of Appeals granted Petitioner's motion to represent himself, so he was not "a party represented by counsel." Thus, it is unclear why the court did not accept his *pro se* brief.

he filed with the Missouri Court of Appeals a waiver of counsel, a motion to proceed *pro se*, and an appellate brief. Petitioner was permitted to proceed *pro se*, but his *pro se* brief was not accepted. Petitioner also asserts that after the Missouri Court of Appeals denied the appeal as presented by his appellate counsel, he filed a Motion for Re-Hearing in which he explained that his appellate counsel had failed to allow him to make the final decision about what claims would be raised on appeal from the denial of the trial court. As in *Clemmons*, it is unclear what more Petitioner could have done to present his claims to the Missouri Court of Appeals.

After review of Petitioner's *pro se* brief, it is not entirely clear whether he actually fairly presented each of the eight claims at issue to the Missouri Court of Appeals. In his *pro se* brief, Petitioner raised three "Points Relied Upon," none of which clearly and specifically corresponds to any of the eight claims he now raises. However, a reading of the brief as a whole shows that within those three claims, Petitioner discusses the factual and legal basis or each of the eight claims he now presents. The Court is inclined to find that Petitioner did fairly present these eight claims to the Missouri Court of Appeals, and thus that there was no procedural default of these claims. However, the Court need not resolve the question of procedural default as to each of these claims. "Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). Even assuming, *arguendo*, that Petitioner has shown that these claims were not procedurally defaulted, the Court finds that they should be denied because they are without merit.

The Court first considers the appropriate standard of review. Petitioner argues that the Court should review the merits of his claims *de novo*, rather than under AEDPA's deferential

standard of review, because the state motion court did not adjudicate his claims on the merits. The Court disagrees. An adjudication on the merits is the resolution of a claim on substantive grounds rather than procedural grounds. *See Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005) ("An adjudication on the merits is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds."); *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) ("adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural"). In its decision, the motion court set out the *Strickland* standard for ineffective assistance of counsel, and it then reviewed and denied each of those claims under the *Strickland* standard. This was sufficient to constitute an adjudication on the merits. *See Worthington v. Roper*, 631 F.3d 487, 497 (8th Cir. 2011) ("[T]he postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.").

Thus, the Court will review the motion court's determinations with regard to each of these claims using AEDPA's deferential standards.

### 1. *Ground One (Part B)—Ineffective Assistance of Counsel Based on Failure to Call Mary Peters as a Witness*

In Ground One (Part B), Petitioner asserts that his trial counsel was ineffective based on her failure to investigate and call as a witness Mary Peters. Petitioner asserts that Ms. Peters was a customer present at the time of the crime, that she described to the police a male at the window next to her who slid a piece of paper to the teller and talked about changing his address, and that her description matched Petitioner only in height and hair color. Petitioner asserts that this was evidence that Petitioner was not actually the robber, and that Petitioner's trial counsel ignored this relevant evidence. The motion court denied this claim, finding that that Petitioner had not

shown that Ms. Peters could have been located through reasonable investigation, that she would have testified if called, or that her testimony would have provided a viable defense for Petitioner. The motion court also found that the facts alleged by Petitioner were refuted by Petitioner's own testimony, that Petitioner's counsel was not ineffective, and that there was no prejudice to Petitioner. Resp't Ex. L, at 119-20.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. With respect to the deficient performance prong of *Strickland*, the evidence refutes Petitioner's contention that his trial counsel ignored this evidence, instead suggesting that she made a reasonable determination that it was irrelevant. At the hearing before the motion court, Petitioner's trial counsel testified that she had talked about Ms. Peters with Petitioner, and that the police report indicated that the police had determined that Ms. Peters was not describing the robber at all, but was actually describing another customer that was in the bank. Resp't Ex. K, at 17. Petitioner's trial counsel testified that based on this information, she determined that Ms. Peters's description did not bear any relationship to the identification or description of Petitioner. *Id.* Although Petitioner asserts that his trial counsel should have done more to investigate instead of relying on secondhand information from the police report, he cannot show that her failure to do so was an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 466 U.S. at 687. Thus, it was not unreasonable for the motion court to find that he could not establish the first prong of *Strickland*.

Second, the motion court's finding that Petitioner was not prejudiced by this error was reasonable and supported by the record. As discussed above, the evidence that Petitioner was the robber was overwhelming, including identifications from three witnesses (one who was at the

scene, and two who knew Petitioner personally and recognized him from photographs); a surveillance tape; and a confession from Petitioner. Even assuming, *arguendo*, that Ms. Peters would have offered a description of the robber that differed somewhat from a description of Petitioner, there is no reasonable probability that such testimony would have resulted in a different outcome at trial.

For all of the above reasons, Ground One (Part B), asserting ineffective assistance of trial counsel based on the failure to call Ms. Peters as a witness, is denied.

### 2. Ground One (Part C)—Ineffective Assistance of Counsel Based on Failure to Call Steven Shear as a Witness

In Ground One (Part C), Petitioner asserts that his trial counsel was ineffective based on her failure to investigate and call as a witness Steven Shear, who saw a black Nissan driving away from the bank around the time of the robbery. Petitioner asserts that Mr. Shear's testimony would have undermined the State's theory that a maroon vehicle seen in the bank's parking lot (and resembling Petitioner's own maroon vehicle) was the getaway car. The motion court denied this claim, finding that that Petitioner had not shown that Mr. Shear could have been located through reasonable investigation, that he would have testified if called, or that his testimony would have provided a viable defense for Petitioner. The motion court also found that the facts alleged by Petitioner were refuted by Petitioner's own testimony, that Petitioner's counsel was not ineffective, and that there was no prejudice to Petitioner. Resp't Ex. L, at 120.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. With regard to the first prong of *Strickland*, it was reasonable for the motion court to find that Petitioner's trial counsel did not show deficient performance by not calling Mr. Shear. At the hearing before the motion court, Petitioner's trial counsel testified that the police report described the vehicle as driving away

from the area of the bank only at thirty-five miles per hour, and that nothing in the police report linked that car to the robbery. Resp't Ex. K, at 24. Petitioner's trial counsel also testified that her trial strategy was to attack the State's theory that the maroon car seen in the bank parking lot belonged to Petitioner by pointing out differences between the description of that car and Petitioner's own vehicle. *Id.* at 24-25. In light of the lack of any connection between the black Nissan and the robbery, the fact that a car traveling at 35 miles per hour on a road near a bank is not in itself particularly remarkable, and the fact that Petitioner's trial counsel had another strategy for attempting to undermine the State's theory that the getaway car belonged to Petitioner, it was not unreasonable for the motion court to find that she did not show deficient performance by failing to contact and call Mr. Shear.

Even assuming, *arguendo*, that trial counsel showed deficient performance by not contacting Mr. Shear and calling him as a witness, the motion court correctly found that Petitioner suffered no prejudice from this error. As discussed above, the evidence against Petitioner was overwhelming and included multiple identifications of Petitioner, the video surveillance footage of the robbery, and his confession. In light of that evidence, there is no reasonable probability that the outcome of Petitioner's case would have been different had counsel called Mr. Shear to testify that a car unconnected to Petitioner was driving away from the bank around the time of the robbery.

For all of the above reasons, Ground One (Part C), asserting ineffective assistance of counsel based on the failure to contact Mr. Shear and call him as a witness, is denied.

### 3. *Ground Two—Ineffective Assistance of Counsel Based on Failure to Obtain Carfax Report and Photograph of Petitioner's Car*

In Ground Two, Petitioner asserts that his trial counsel was ineffective because she failed to obtain a Carfax report and a photograph of his car to prove that his vehicle was not the one

seen in the parking lot by state witness Misty Mitchell-Guille. The motion court denied this claim, finding that Petitioner had not alleged facts that warranted relief and that any alleged error did not result in prejudice to Petitioner. The motion court also noted that Petitioner's trial counsel did address the issue of what the car looked like in examining Ms. Mitchell-Guille and Petitioner's wife. Resp't Ex. L, at 121.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. With regard to the first prong of *Strickland*, it was not unreasonable for the motion court to find that trial counsel's performance was not deficient, in light of the fact that the car in the bank parking lot was a relatively small part of the State's case and in light of the fact that trial counsel *did* make efforts to undermine the State's theory about that car. At trial, the State presented evidence from Ms. Mitchell-Guille that around the time of the robbery she saw a maroon "sporty-type vehicle with a fin on the back" in the bank parking lot that had its door open. Resp't Ex. C, pp. 202-04. Petitioner asserts that he did not own or have access to such a car, but instead owned a maroon four-door Acura T1. In her cross-examination of Ms. Mitchel-Guille, trial counsel elicited testimony that that the car Ms. Mitchel-Guille saw possibly could have been a two-door car. *Id.* at 206. Trial counsel also elicited testimony from Ms. Mitchell-Guille that she had not identified a specific car, did not remember a license number, did not know who the car belonged to, and did not see anyone drive away in the car. Resp't Ex. C, at 205-07. Petitioner's ex-wife also testified that Petitioner drove a four-door car, not a two-door car. Resp't Ex. D, at 240-41. In her closing argument, Petitioner's trial counsel pointed out the difference between the two-door car described by Ms. Mitchell-Guille and the four-door car belonging to Petitioner. Resp't Ex. D, at 409. Although Petitioner argues that his trial counsel should have done more to undermine the State's theory, he cannot

show that her decision not to do so was an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 466 U.S. at 687. Thus, it was not unreasonable for the motion court to find that he could not establish the first prong of *Strickland*.

With regard to the prejudice prong of *Strickland*, it was not unreasonable for the motion court to determine that there was no prejudice to Petitioner from this alleged error. The testimony that a car seen in the bank parking lot resembled Petitioner's was a relatively insignificant detail in the case, particularly in light of the lack of evidence that the car in the bank parking lot was used in the robbery. Moreover, as discussed above, the evidence against Petitioner was overwhelming and included multiple identifications of Petitioner, the video surveillance footage of the robbery, and his confession. In light of that evidence, there is no reasonable probability that the outcome of Petitioner's case would have been different even if counsel had offered definitive proof that the car seen by Ms. Mitchell-Guille did not belong to Petitioner.

For the above reasons, Ground Two is denied.

   **4.** ***Ground Three—Ineffective Assistance of Counsel Based on Failure to Obtain and Present Transcripts of Suppression Hearing in St. Louis County Case***

In Ground Three, Petitioner argues that his counsel was ineffective because she did not obtain transcripts of a St. Louis County suppression hearing[5] that took place in June of 2008, in which Detective Lewis testified about the events that took place at the Florissant police department on October 4th and 5th of 2007. The motion court denied this claim, finding that

---

[5] On October 4, 2007, Petitioner was arrested for, and questioned about, three bank robberies: the Commerce Bank robbery in St. Charles County that formed the basis for the conviction at issue in this habeas petition, and two other bank robberies in St. Louis County. Resp't Ex. L, at 66. Petitioner ultimately entered an *Alford* plea in the two St. Louis County cases. *See* Resp't Ex. L, at 99; *North Carolina v. Alford*, 400 U.S. 25 (1970).

Petitioner had not alleged that a transcript could have been obtained; had not shown how the information would be valuable at trial; and had not shown that failure to obtain the information prejudiced him. Resp't Ex. L, at 121-22.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. Petitioner did not allege in his claim presented to the motion court, and has not alleged in the instant petition, how anything in the suppression hearing in the other case would have assisted him at trial or would have affected the outcome of the case. Thus, the state court reasonably found that he had not shown a reasonable probability that the outcome of the trial would have been different had this evidence been obtained.

In his Reply brief, Petitioner does provide additional detail regarding the testimony that Detective Lewis gave at the St. Louis County suppression hearing. Reply, Doc. 16, at 20-26.[6] Petitioner identifies several pieces of testimony that Petitioner asserts indicate that Detective Lewis was "willing to be untruthful about the events that took place on October 4th, 5th." *Id.* at 26. For example, he points out that Detective Lewis testified that upon arriving at Petitioner's home, officers immediately told Petitioner they were there to investigate missing money, yet he also testified that Petitioner had said he thought the police were there to serve him divorce papers. *Id.* at 21-22. Petitioner states that he asked his trial counsel why he would ask about divorce papers if the police had immediately told him they were there to talk about missing money from a bank. *Id.* at 22. Petitioner also points out that in the St. Louis County suppression hearing, Detective Lewis testified that Petitioner at one point during his arrest said he was nervous, yet in his suppression hearing in this case, Detective Lewis never testified that

---

[6] For the documents that were electronically filed in this case, page numbers refer to the numbering of the electronically filed document.

Petitioner stated he was nervous. *Id.* at 22-23. Petitioner also points out that Detective Lewis told Petitioner that officers wanted to talk to him about "missing money from a bank," when in reality they were there to investigate three separate bank robberies, not missing money from "a bank."[7] *Id.* at 23-24.

Even assuming, *arguendo*, that the Court could consider these factual allegations that were presented for the first time in Petitioner's Reply brief, Petitioner still could not show any prejudice from his trial counsel's failure to obtain the St. Louis County transcript. The inconsistencies Petitioner identifies in Detective Lewis's testimony are barely inconsistent at all and do not appear to the Court to indicate that Detective Lewis was being "untruthful" regarding the events at issue. Moreover, in light of all of the other evidence in the case that did not come from Detective Lewis, the motion court reasonably found that Petitioner could not show any reasonable probability that the outcome of his trial would have been different had his trial counsel obtained this evidence and used it to undermine Detective Lewis's credibility.

For all of the above reasons, Ground Three is denied.

### 5. *Ground Four—Ineffective Assistance of Counsel Based on Failure to Contact and Call Police Officers Who Interrogated Petitioner*

In Ground Three, Petitioner asserts that his trial counsel was ineffective in that she failed to contact and call a police officer and two FBI agents who interrogated Petitioner. Petitioner asserts that he told his trial counsel that these officers interrogated him and then stopped because Petitioner requested counsel and denied any involvement in the robbery. He asserts that these witnesses could verify that Petitioner requested counsel on October 4, 2007—the day before he gave a written confession. The motion court denied the claim, finding that Petitioner had not

---

[7] Petitioner's Reply brief contains other arguments about the untruthfulness of Detective Lewis's testimony, but they do not appear to relate to the St. Louis County suppression hearing transcript and thus are not relevant to Ground Three. Reply, Doc. 16, at 22-24.

shown that the witnesses could have been located through reasonable investigation, that they would have testified if called, or what they would have testified to if called. The motion court also noted that Petitioner's trial counsel did cross-examine the detectives who talked to the defendant prior to his written statements during the suppression hearing, and that the detectives testified that they were the only ones who spoke with Petitioner during the relevant time period. The motion court found that Petitioner's counsel was effective and that there was no prejudice to Petitioner. Resp't Ex. L, at 123.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. At the motion hearing, Petitioner's trial counsel testified that she did not remember Petitioner making any suggestions about witnesses for the suppression hearing. Resp't Ex. K, at 12. Petitioner's trial counsel also testified that although Petitioner had spoken to her about his questioning by police officers from different departments, she did not contact them because based on police reports, she determined that they did not have any useful information. *Id.* at 15-16. In addition, Petitioner cross-examined Detective Lewis at the suppression hearing, and he testified Petitioner had never asked for an attorney in Detective Lewis's presence and that no one else had spoken to Mr. Haidul when he was not present. Resp't Ex. A, at 17. In light of these facts, it was not unreasonable for the motion court to find that Petitioner's trial counsel did not show deficient performance by not contacting these potential witnesses.

The motion court's finding of no prejudice was also not unreasonable. Petitioner has not presented any evidence that these officers, if contacted, would have supported his version of events. Moreover, although the confession was a significant piece of evidence against Petitioner, there was a great deal of other evidence of guilt. The other evidence included, but was not

limited to, the identifications of Petitioner as the robber by the bank teller, his children's babysitter, and his ex-wife; and the video surveillance footage of the robbery. Given the "doubly deferential" standard the Court must apply, the Court cannot say that it was objectively unreasonable for the motion court to determine that trial counsel's performance was not deficient and that Petitioner was not prejudiced under these circumstances.

For all of the above reasons, Ground Four is denied.

### 6. *Ground Six—Ineffective Assistance of Counsel Based on Failure to Obtain Evidence from Petitioner's Father*

In Ground Six, Petitioner argues that his trial counsel was ineffective because she failed to obtain evidence from Petitioner's father, John Haidul, Sr. Petitioner asserts that his father had a conversation with Petitioner's ex-wife that contradicts the testimony that Petitioner's ex-wife gave at trial. The motion court denied this claim, finding that Petitioner had not shown that the testimony of Petitioner's father would have provided a viable defense, that Petitioner had failed to provide an affidavit as to what the witness would have testified to, and failed to show how the evidence would have had an effect on the trial. The motion court concluded that Petitioner had not shown prejudice from the alleged error. Resp't Ex. L, at 127-28.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. The motion court reasonably determined that Petitioner could not show prejudice under *Strickland.* Even assuming, *arguendo*, that Ms. Haidul's testimony had been completely undermined and rendered useless, the other evidence against Petitioner (the two identifications, the video, and the confession) was still overwhelming. The motion court reasonably determined that Petitioner could not show a reasonable probability that the outcome of trial would have been different absent counsel's alleged error, and thus that he could not show prejudice.

For all of the above reasons, Ground Six is denied.

**7. *Ground Seven—Ineffective Assistance of Counsel Based on Failure to Obtain Photographs of Richard Michele and Christopher Knocke and to Present Crime Stoppers Evidence***

In Ground Seven, Petitioner argues that his trial counsel was ineffective because she failed to obtain photographs of Richard Michele and Christopher Knocke and because she failed to present evidence that released photographs of the robber resembled several people other than Petitioner. Petitioner suggests that this evidence would have supported his claim that the witnesses who identified him were mistaken. The motion court denied this claim, finding that Petitioner had not shown that the failure to obtain and produce this information had prejudiced him. Resp't Ex. L, at 130-32. The motion court also noted that at trial, Petitioner's counsel had cross-examined Detective Grove about Christopher Knocke. *Id.* at 132.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. The jury did hear evidence that there were calls to Crime Stoppers in which callers claimed to have recognized someone other than Petitioner as the robber. Resp't Ex. C, at 190-92. Petitioner's trial counsel also asked a police witness about the Crime Stoppers tip that led to an investigation of Christopher Knocke, but the detective testified that although Mr. Knocke's driver's license photograph resembled the robber, he concluded upon seeing him in person that he was not the robber. Resp't Ex. C, at 193-99. Petitioner presents no reason to believe that developing and offering additional evidence of this type would have changed the outcome of his trial. Petitioner also does not suggest that there is any evidence tying any of these other individuals to the robbery. Moreover, as discussed above, the other evidence of Petitioner's guilt was overwhelming. Thus, the motion court's

finding that Petitioner was not prejudiced by the alleged counsel error was not objectively unreasonable.

For all of the above reasons, Ground Seven is denied.

>    8.    ***Ground Eight—Ineffective Assistance of Counsel Based on Failure to Develop Evidence that a Few Hours Before Petitioner Confessed, He Was Exposed to Mace and Was Not Allowed His Inhaler***

In Ground Eight, Petitioner argues that his trial counsel was ineffective because she failed to investigate and develop evidence that a few hours before Petitioner made his written confession to police, he was exposed to mace during an incident in the Florissant jail and was denied his asthma inhaler. In his Reply, Petitioner states that in the late hours of October 4th, 2007, or the early hours of October 5th, 2007, officers sprayed mace to subdue an inmate in the cell next door to Petitioner's cell, and the fumes overwhelmed the entire jail housing area and triggered Petitioner's asthma. Petitioner states that he requested his asthma rescue inhaler, and an officer refused to give it to him. He states that at roughly 10:00 a.m. on October 5, 2007, he was taken back into an interview room by Detective Lewis, and Petitioner again requested his rescue inhaler. Petitioner states that Detective Lewis told him, "I will give you what you want if you give me what I want, the statement," after which Petitioner made his confession. Petitioner argues that his trial counsel should have obtained the names of his fellow inmates at the jail where mace was sprayed and presented it at his suppression hearing to show that his confession was not voluntary. The motion court denied this claim, finding that Petitioner had not shown any facts as to the value of the information requested and could not show prejudice from his counsel's alleged error. Resp't Ex. L, at 132-34.

The Court cannot say that the motion court's denial of this claim was objectively unreasonable. At the motion hearing, Petitioner's trial counsel testified that she did not

remember Petitioner making any suggestions about witnesses for the suppression hearing, and it was not objectively unreasonable for the motion court to find that Petitioner's trial counsel did not show deficient performance by not contacting those witnesses. Resp't Ex. K, at 12. In addition, with regard to prejudice, Petitioner has not provided evidence that there is a reasonable probability that the outcome of the suppression hearing or the trial would have been different if his counsel had contacted the witnesses Petitioner identifies. First, Petitioner has not shown that the witnesses he now identifies would have testified in a manner that would support his version of events. Second, even if these inmates had testified that Petitioner was exposed to mace in the early hours of October 5th, they would not have been in a position to testify about whether Petitioner was still suffering from an asthma attack several hours later when he was interrogated by Detective Lewis in the interview room, nor could they have testified in support of Petitioner's contention that in the interview room, Detective Lewis withheld Petitioner's asthma inhaler on the condition that he make a statement. Moreover, in light of the detailed and lengthy nature of Petitioner's confession,[8] it appears very unlikely that the presentation of evidence that Petitioner had been exposed to mace several hours earlier would have led the trial court to find this confession was involuntarily made. Finally, even assuming that the confession had been suppressed, it was not objectively unreasonable for the motion court to find that the outcome of Petitioner's trial would not have been different. Although the confession was a significant piece of evidence against Petitioner, there was a great deal of other evidence of guilt. The other

---

[8] Petitioner's confession was nine pages long and consisted of  a very detailed handwritten account of his employment problems that began over a year before the robbery, the gambling problem he developed, the large debts he incurred from gambling, his problems with his wife, his attempts to get help with money from his family members, his concerns that he needed money for his children, his decision that he needed to "do whatever it takes to make sure they are taken care of," his actions and thoughts before and during the robbery, the bills he paid using the money he obtained from the robbery, and his resolution never to break the law again. Resp't Ex. G.

evidence included, but was not limited to, the identifications of Petitioner as the robber by the bank teller, his children's babysitter, and his ex-wife; and the video surveillance footage of the robbery. It was not objectively unreasonable for the motion court to decide that there is no reasonable probability that, but for this error, the outcome of Petitioner's trial would have been different.

For all of the above reasons, Ground Eight is denied.

9. ***Ground Nine—Ineffective Assistance of Counsel Based on Failure to Produce Transcripts from Petitioner's Dissolution Hearing***

In Ground Eight, Petitioner argues that his trial counsel was ineffective because she failed to present transcripts from his dissolution hearing to support his contention that his ex-wife had committed perjury during that hearing. Petitioner asserts that this evidence would have supported his position that his ex-wife was a biased witness and was not capable of giving reliable testimony during Petitioner's trial. The motion court denied this claim, finding that Petitioner's trial counsel's cross-examination and re-cross-examination of Petitioner's ex-wife at trial showed performance well above the required standard. Resp't Ex. L, at 134-35. The motion court also found that Petitioner had failed to show that his ex-wife had allegedly perjured herself during their divorce proceeding or that had the evidence sought been brought before the jury, the result of the trial would have been different. Resp't Ex. L, at 134-35.

The motion court's denial of this claim is supported by the record and did not involve an unreasonable application of *Strickland* to the facts of this case. In his Reply, Petitioner asserts that during the dissolution hearing, Ms. Haidul gave inaccurate testimony regarding the amount of a home refinancing and regarding whether she was on the mortgage of their home. This alleged inaccuracy is unrelated to the issues in this case and would have had little or no value in impeaching Ms. Haidul's testimony. Moreover, in cross-examining Ms. Haidul, Petitioner's trial

counsel elicited evidence of bias by asking Ms. Haidul about her marital problems with Petitioner, their dissolution proceedings, and their custody dispute. Resp't Ex. D, at pp. 249-53, 258-59. Moreover, even assuming, *arguendo*, that Ms. Haidul's testimony had been completely undermined and rendered useless, the other evidence against Petitioner (the two identifications, the video, and the confession) was still overwhelming. The motion court reasonably determined that Petitioner could not show either deficient performance or prejudice.

For all of the above reasons, Ground Nine is denied.

### C. Claims Presented in the Motion for Post-Conviction Relief but Not in the Appeal: Grounds Five and Ten

Ground Five (ineffective assistance of counsel based on failure to object to Cathy Bienkowski's testimony) and Ground Ten (ineffective assistance of counsel based on failure to impeach Jessica Hernandez's testimony) are procedurally defaulted due to Petitioner's failure to raise those claims in his initial post-conviction motion. Even assuming, *arguendo*, that Petitioner could show cause and prejudice sufficient to excuse his procedural default of either claim, the Court finds that that both claims are without merit.

#### 1. Ground Five—Ineffective Assistance of Counsel Based on Failure to Object to Testimony of Cathy Bienkowski

In Ground Five, Petitioner argues that his trial counsel was ineffective because she failed to object to testimony by state witness Cathy Bienkowski, the babysitter for Petitioner's children, that she received $720 in cash from Petitioner. Petitioner argues that this cash was given to Ms. Bienkowski ten to fourteen days before the robbery at issue took place and was evidence related to a different robbery. Petitioner asserts that by failing to object to this evidence, trial counsel did not preserve the matter for appellate review.

Even assuming, *arguendo*, that Petitioner could show deficient performance, he cannot show that he was prejudiced by this deficient performance. The fact that Petitioner made a cash payment to Ms. Bienkowski was a very minor part of the State's case. In light of the other overwhelming evidence against him (including three identifications, surveillance footage of the robbery, and a confession), Petitioner cannot establish that had his trial counsel objected to this evidence regarding cash payments, the outcome of his trial would have been different. Nor can Petitioner show that had this issue been preserved for appeal, his appeal would have been successful.

For all of the above reasons, Ground Five is denied.

### 2. *Ground Ten—Ineffective Assistance of Counsel Based on Failure to Introduce Evidence to Impeach Jessica Hernandez's Testimony*

In Ground Ten, Petitioner asserts that his trial counsel was ineffective for not introducing evidence that would have shown that the testimony of bank teller Jessica Hernandez was unreliable. Petitioner asserts that his trial counsel should have presented evidence of discrepancies between the description of the robber given by Ms. Hernandez and Petitioner's actual physical characteristics, and that Petitioner's trial counsel should have pointed out that the robbery only lasted twenty-five seconds and so Ms. Hernandez could not have spent much time looking at his face because her identifications related to the suspect's clothes.

Petitioner cannot show either that Petitioner's counsel's performance was deficient or that the alleged error prejudiced him. Much of the evidence Petitioner cites *was* introduced at trial. On cross-examination, trial counsel asked Ms. Hernandez about her description of the robber, including her description of him as having brown eyes. Resp't Ex. C, at 140. Trial counsel noted that Petitioner has green eyes. Resp't Ex. C, at p. 140. Petitioner's ex-wife also

testified that Petitioner has green eyes. Resp't Ex. D, at p. 257. The jury heard Petitioner's statement to the police that the robbery took twenty to thirty-seconds, and the videotape showing the robbery itself was in evidence and was published to the jury. Resp't Ex. D, at 288; Resp't Ex. C, at 154-56. Petitioner's trial counsel adequately ensured that information undermining Ms. Hernandez's identification was introduced at trial, and her failure to present more or cumulative evidence did not constitute deficient performance. Moreover, in light of the other overwhelming evidence against Petitioner (principally the two other identifications and the confession), Petitioner cannot establish a reasonable probability that the introduction of additional evidence calling into question Ms. Hernandez's identification would have changed the outcome of his trial. Thus, Petitioner cannot establish either prong of *Strickland.*

For all of the above reasons, Ground Ten is denied.

**IV.    CONCLUSION**

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the Petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citation omitted). The Court finds that reasonable jurists could not differ on Petitioner's claims, so the Court will not issue a certificate of appealability. Accordingly,

I**T IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2017.